

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 13, 2023

**BY EMAIL AND ECF**
The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

  Re: *United States v. Leury Mojica*, 21 Cr. 377 (AKH)

Dear Judge Hellerstein:

  The Government respectfully submits this letter in advance of sentencing in this matter for defendant Leury Mojica (the "defendant"), which is scheduled for June 15, 2023. The defendant pled guilty pursuant to a plea agreement (the "Plea Agreement") in which the parties stipulated to a United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of 51 to 63 months' imprisonment (the "Stipulated Guidelines Range"). The Probation Department ("Probation") agrees with the Stipulated Guidelines Range and has recommended a sentence of 51 months' imprisonment. (Presentence Investigation Report ("PSR") at 18.)

  For the reasons set forth below, the Government submits that a sentence of 75 months' imprisonment – i.e., one year above the top end of the Stipulated Guidelines Range – would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing. In making this recommendation, the Government considers not only the instant conviction, but, as described below, the defendant's participation in a violent, potentially gang-related stabbing of another inmate at MDC Brooklyn which occurred on or about February 28, 2023 (the "MDC Stabbing").[1]

**I. Background**

  **a. The Robbery Pattern**

  This case relates to a pattern of three robberies of commercial parking lot facilities in the Bronx that occurred in the early morning hours on March 5, March 7, and March 9, 2021. The targeted parking lots were open-air lots where vehicles were generally parked outside, and which had an indoor office or other location where an on-duty attendant kept keys for the vehicles parked

---

[1] The final PSR is dated February 2, 2023, and, therefore, Probation's recommendation of a 51-month sentence was made prior to the MDC Stabbing.

on the lot. The robbers[2] would typically restrain the parking attendant by force, take keys to cars, and attempt to access the cars and drive them off the lot. Specifically:

- March 5, 2021 Robbery: On March 5, 2021, at approximately 3:10 a.m., at least five individuals entered a parking lot on White Plains Road in the Bronx. Additional robbers remained inside of a car parked outside of the parking lot and communicated by phone with the individuals in the parking lot about the robbery. The robbers who entered the parking lot approached the indoor office on the premises of the parking lot. They pushed the parking lot attendant to the ground and restrained him while holding an unknown object to the back of his head. The robbers accessed keys from the office and ultimately stole four cars from the parking lot, specifically, a Jeep Grand Cherokee, a Honda Accord, a Kia Optima, and an Acura MDX.

- March 7, 2021 Robbery: On March 7, 2021, at approximately 5:05 a.m., five individuals drove on to the premises of a parking lot on East Tremont Avenue in the Bronx. These individuals arrived in the Acura MDX that had been stolen on March 5, 2021. The individuals exited the vehicle and briefly engaged the parking lot attendant in discussion. The robbers then assaulted the attendant, including by punching and kicking him. As the attendant was restrained by certain of the robbers, other robbers entered the indoor office on the premises of the parking lot. Those individuals removed keys and approximately $540 from the office. However, the robbers did not successfully steal any cars, and they were chased away from the parking lot by the attendant.

- March 9, 2021 Robbery: On March 9, 2021, at approximately 3:00 a.m., five individuals drove on to the premises of a parking lot on Webster Avenue in the Bronx in the Acura MDX that had been stolen on March 5, 2021 and used in connection with the robbery on March 7, 2021. The passengers of the Acura MDX jumped out of the car. One of the passengers, later identified as Mojica, pointed what appeared to be a firearm, but which law enforcement eventually came to understand was an imitation firearm, in the face of the parking lot attendant.[3] The robbers pushed the attendant into the office where keys for cars parked on the lot were held. The attendant was held in the office with the imitation firearm pointed at his head for several minutes while the robbers removed keys from the office and stole three cars from the parking lot, specifically, a Honda CRV, a Toyota Camry, and a Porsche Panamera. The defendants also removed the attendant's identification cards so that they would have his identity after the robbery.

With one exception, the cars stolen from the parking lots were ultimately recovered by law enforcement. The one exception is the Kia Optima stolen on March 5, 2021. The Kia Optima was located by law enforcement parked on a street in the Bronx on March 10, 2021. Law enforcement

---

[2] While some individuals were present at all three robberies, not every individual participated in all of the robberies. For example, Mojica was only present for the March 9 robbery.

[3] The attendant did not know at the time of the robbery that the object pointed at him was an imitation firearm, rather than a real firearm.

thereafter observed a female get into the car and drive away. When law enforcement attempted to stop that individual – later identified as Mojica's girlfriend – she sped away from law enforcement and ultimately crashed and totaled the car.

### b. Mojica's Role in the Robbery Pattern

Mojica was only an active participant in the third robbery, on March 9, 2021. However, Mojica had at least some connection to the prior robberies. Specifically, as noted above and in the PSR, Mojica's girlfriend was driving the Kia Optima stolen during the March 5 robbery at the time it was recovered by law enforcement on March 10, 2021. Indeed, Mojica's girlfriend attempted to flee from law enforcement that day, indicating her awareness that the Kia Optima was stolen. Therefore, while Mojica is not believed to have been present for the March 5 robbery, the Government believes he was at least aware of it and shared in the stolen property.

Mojica played a critical role in the March 9 robbery. Specifically, Mojica was the individual who jumped out of the Acura MDX and pointed what appeared to be a firearm in the face of the parking lot attendant. Mojica forced the attendant into the office of the parking lot and kept the imitation firearm pointed at the attendant's head for over four minutes while other robbers removed keys from the office. At first the attendant was kept on his knees, with Mojica pointing the imitation firearm at the side of his head. Eventually, Mojica and other robbers forced the attendant to lie face-down on the floor, with Mojica pointing and holding the imitation firearm to the back of the attendant's head. As the defendants forced the attendant to transition from sitting on his knees to lying face-down, Mojica placed his knee squarely into the attendant's back.

The imitation firearm used by Mojica looked real, and the robbers threatened the attendant while he was held inside the office. The attendant was fearful for his life and, as noted in the PSR and below, continues to suffer adverse consequences from the events of March 9, 2021.

Below are photographs taken from the surveillance video from the parking lot showing Mojica exiting the Acura MDX, forcing the attendant into the office, and holding the attendant in the office with the imitation firearm pointed at his head.






Six individuals have been charged in connection with the robbery pattern. Mojica is the second defendant to be sentenced.[4]

### c. The MDC Stabbing

On February 28, 2023, after Mojica pled guilty in the instant case and was awaiting sentencing, he participated in a violent stabbing of another inmate (the "Victim") at MDC

---

[4] The first defendant to be sentenced, Windelson Montero, received a sentence of 35 months' imprisonment. While Montero participated in two of the robberies, as opposed to one, and did physical grab and hold down the attendant during at least one of those robberies, Montero's conduct at either robbery did not rise to the level of Mojica's attacking the parking lot attendant and pointing the imitation firearm in his face. In addition, at Montero's sentencing proceeding, defense counsel noted the fact that Montero had served seven months in state prison on unrelated state charges and that he would not receive credit for that time towards his federal sentence.

Brooklyn. Specifically, the Victim was assaulted and stabbed by six individuals in a portion of the prison that houses individuals affiliated with the Trinitarios gang. Surveillance camera from the prison depicts Mojica as an active participant in the stabbing, including by restraining the Victim while another inmate stabs the Victim and by swinging a sharp object at the Victim.[5] According to a report prepared by the Bureau of Prisons, the Victim ultimately suffered lacerations to his forehead and nose, puncture wounds to the right side of his face and lower back and arms, a posterior neck wound, and multiple cut abrasions. While an investigation into the stabbing and the motivation for the stabbing is ongoing, it is presently believed that the motivation was gang-related. As indicated in the PSR, the defendant is understood to be affiliated with the Trinitarios gang.[6]

Immediately below are photographs of Mojica taken by Bureau of Prisons personnel immediately after the incident. Below those photographs (on the following page) is a picture of Mojica's clothing taken after the incident.

 

---

[5] In advance of sentencing, the Government is submitting a disc containing excerpts of surveillance camera footage from the parking lot and surveillance camera footage from MDC.

[6] The other five suspected assailants are co-defendants in a case pending before Judge J. Paul Oetken and alleged to be associates of the Own Every Dollar ("OED") gang, a subset of the Trinitarios. *See* 23 Cr. 293 (JPO).



## II. Discussion

### a. Applicable Law

The Guidelines still provide important guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### b. A Sentence One Year Above the Stipulated Guidelines Range is Appropriate

The Government respectfully submits that the statutory sentencing factors set forth in Title 18, United States Code, Section 3553(a) weigh in favor of a sentence above the Guidelines range of 51 to 63 months' imprisonment, and specifically a sentence of 75 months' imprisonment. Such a sentence is necessary, among other reasons, to reflect the gravity of the instant offense and the history and characteristics of the defendant.

The defendant committed a serious crime, with significant and lasting repercussions for the parking lot attendant. As discussed above, Mojica was the individual who, on March 9, 2021, accosted the parking lot attendant, held the imitation (but realistic) firearm in the attendant's face, and restrained the attendant in a confined space for over four minutes while pointing that imitation firearm at his head. In addition, at one point while restraining the attendant in the office, Mojica placed the attendant face-down on the floor, and thereafter placed his own knee into the attendant's back while keeping the purported firearm pointed in his direction. During the robbery, the Victim had no reason to know that the imitation firearm pointed in his face was fake, and had every reason to fear for his life.

As indicated in the PSR, the parking lot attendant that evening has reported that he suffers from "insomnia, nightmares, and a fear of being outside at night because of the assault." (PSR ¶ 34.) The attendant has explained that the robbers "stole all of his identifying information and Social Security card" and is "worried he will run into them again." (*Id.*) He "cannot get the image of having a gun held to his head while someone screamed 'just kill him' repeatedly" and was "'terrified for [his] life.'" *Id.*

Mojica's callous disregard for the physical and emotional well-being of the parking lot attendant requires substantial punishment to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. There is also a significant need to afford adequate specific and general deterrence. Hobbs Act robberies of the kind committed by Mojica and his co-conspirators are unfortunately far too common and have traumatic impacts on the victims such as the parking lot attendant who was simply doing his job. Individuals considering engaging in such conduct – including Mojica – must understand that there will be serious consequences.

In addition, Mojica's recent conduct – in particular his role in this violent prison stabbing – cannot be ignored. While in prison and awaiting sentencing for his role in the commission of a serious federal crime, Mojica conspired with five other individuals affiliated with the OED subset of the Trinitarios to assault and stab another inmate. And, as described above, Mojica did not play a passive role in this stabbing. The MDC Stabbing is a horrific event in its own right, and Mojica's participation in it is only made worse by the fact that he engaged in this conduct while awaiting sentence on another violent federal crime. A just sentence in this case must consider how the defendant's participation in this stabbing reflects his history and characteristics as well as the need to promote respect for the law, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. A sentence above 63 months' imprisonment – one year above the Stipulated Guidelines Range, and two years above the low-end of that Guidelines range – is necessary to achieve those ends.

### III.     Conclusion

For the reasons set forth above, a sentence of 75 months' imprisonment, i.e., one year above the top end of the Guidelines range of 51 to 63 months, is warranted.

Respectfully Submitted,

DAMIAN WILLIAMS
United States Attorney

By: ___/s/_____
Matthew Weinberg
Assistant United States Attorneys
(212) 637-2386

cc:     Derrick Magwood, Esq.