N6s2MojS kjc

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,              New York, N.Y.

4              v.                           21 Cr. 377 (AKH)

5    LEURY MOJICA,

6                    Defendant.

7    ------------------------------x       Sentencing

8                                          June 28, 2023
                                           10:50 a.m.
9

10   Before:

11                    HON. ALVIN K. HELLERSTEIN,

12                                         District Judge

13

14                          APPEARANCES
15
     DAMIAN WILLIAMS
16        United States Attorney for the
          Southern District of New York
17   BY:  MATTHEW A. WEINBERG
          Assistant United States Attorney
18

19   DERRICK MAGWOOD
          Attorney for Defendant
20

21   Also Present:

22   DAGOBERTO ORRANTIA, Spanish Interpreter, Standby

23

24

25
```

N6s2MojS kjc

 1          (Case called)

 2          THE DEPUTY CLERK:  Counsel, please state your

 3   appearances for the record.

 4          MR. WEINBERG:  Yes.  Good morning, your Honor.

 5   Matthew Weinberg appearing for the government.

 6          THE COURT:  Good morning, Mr. Weinberg.

 7          MR. MAGWOOD:  Good morning, your Honor.  It's Derrick

 8   Magwood, 170 Old Country Road, Mineola, for Mr. Mojica.

 9          THE COURT:  Good morning.

10          Good morning, Mr. Mojica.  Could you remove your

11   mask, please, Mr. Mojica.

12          THE DEFENDANT (In English):  Excuse me?

13          THE COURT:  Could you remove your mask, please.

14          THE DEFENDANT (In English):  Good morning.

15          THE COURT:  Sorry?

16          THE DEFENDANT (In English):  I said good morning.

17          THE COURT:  Good morning, Mr. Mojica.

18          This is a continuation of the sentencing.  We

19   adjourned it in order to get supplementary information both

20   from the defense and the government, and they have come in.

21   But let me start again to conduct the sentencing.

22          Have you read the presentence investigative report,

23   Mr. Mojica?

24          THE DEFENDANT (In English):  I believe so, yes.

25          THE COURT:  It's your best recollection that you read

N6s2MojS kjc

1   it?

2           THE DEFENDANT (In English):  That's --

3           THE COURT:  Why don't -- why doesn't Mr. Magwood show

4   you what you have read.

5           MR. MAGWOOD:  Judge, I met with my client last week

6   and -- I believe it was on Thursday --

7           THE COURT:  Take off your mask, please.

8           MR. MAGWOOD:  We met last Thursday, and we reviewed

9   the presentence report together.

10          THE COURT:  Do you remember that, Mr. Mojica?

11          THE DEFENDANT (In English):  Yes, sir.

12          THE COURT:  Did you find any facts in the report that

13  you thought should be corrected?

14          THE DEFENDANT (In English):  Excuse me?

15          THE COURT:  Did you find any facts in the report that

16  you thought should be corrected?

17          THE DEFENDANT (In English):  I think everything was

18  on the line.  Everything was good.

19          THE COURT:  Okay.  Mr. Magwood, are there any facts

20  that you wish me to modify or correct?

21          MR. MAGWOOD:  No, your Honor.  We reviewed it -- we

22  had reviewed it before, but we reviewed it just to go through

23  because I was asking about additional information.  So we just

24  went through it in detail.

25          THE COURT:  And there are no factual issues?

N6s2MojS kjc

1          MR. MAGWOOD:  No.  Everything that was there was

2     accurate.

3          THE COURT:  Does the government have any?

4          MR. MAGWOOD:  No, your Honor.

5          THE COURT:  I adopt the facts as set out in the

6     presentence investigative report.

7          Mr. Mojica pleaded guilty before Judge Willis on

8     November 16, 2022.  I approved the plea on May 2, 2023.

9          Mr. Mojica pleaded guilty pursuant to a plea

10    agreement, which I adopt as the current findings on the

11    sentencing guidelines.  The offense level, under section 2B3.1

12    is 20.  There were upward adjustments of four, two, and one

13    because of use of a dangerous weapon, because of the restraint

14    of an individual, and because of the amount of loss, which is

15    greater than $20,000 and less than $95,000.  The gross offense

16    level is 27.  Three levels are deducted for acceptance of

17    responsibility, yielding an offense level of 24.

18          Do I have it right, Mr. Weinberg?

19          MR. WEINBERG:  Yes, your Honor, that is correct.

20          THE COURT:  Do I have that right, Mr. Magwood?

21          MR. MAGWOOD:  Yes.

22          THE COURT:  I so find.

23          Mr. Mojica has no criminal history points.  He is in

24    category I.  The guideline range is 51 to 63 months, followed

25    by one to three years of supervised release.

N6s2MojS kjc

1              Do I have it right, Mr. Weinberg?

2              MR. WEINBERG:  Yes, your Honor, that is correct.

3              THE COURT:  Do I have it right, Mr. Magwood?

4              MR. MAGWOOD:  Yes.

5              THE COURT:  I so find.

6              Mr. Mojica has been in custody since February 22,

7       2022.  He is a citizen of the United States.

8              And from there, I will let you speak, Mr. Magwood.

9              MR. MAGWOOD:  Yes, your Honor.

10             So for Mr. Mojica, we are still -- regarding this

11      incident that happened several weeks ago, we are still

12      receiving information even as of this morning regarding what

13      happened.  Because that situation has not been finalized,

14      there have been no charges brought against him.  I don't think

15      it's -- that we should really use that as a factor to punish

16      him more, instead, to let a thorough investigation of that

17      happen.

18             As far as from meeting with Mr. Mojica and speaking

19      with him over time, I found him to be very engaging.  I found

20      certain things, when -- for a young person to move and to

21      leave -- go from different schools, that in some ways he

22      needed additional services.  Those things can lead to

23      frustration, they can lead to lack of direction and focus, and

24      we see in his history that there were little things that were

25      going on.

N6s2MojS kjc

1          He got himself involved here with a group that

2     were -- I don't think that their intent towards him was

3     genuine, and they put him into a situation which he has always

4     said, you know what, I had no business being involved in this.

5     I should not have done it.  And he's always been from the

6     beginning, you know, I will take -- I will accept

7     responsibility for it.

8          THE COURT:  What does that mean?

9          MR. MAGWOOD:  He said -- he knew that he would be

10    punished for it, he knew that he would receive jail time for

11    it, and he never gave me any of the -- he didn't say it was

12    somebody's else fault.  He did not say that someone else

13    threatened him to do it, that it was his idea.  He said, I did

14    do this, and I take responsibility for it, and he never looked

15    for any way to say, well, here's a defense to it.  He said

16    this is something that I did.

17          I thought that was genuine, I thought that that is a

18    big part of growing up, and a lot of people don't do that even

19    as they get older.  They always look for a reason of why or

20    what happened to this person and how about this case?  He has

21    said from the beginning that, you know, I should not have done

22    it, and I did do it, and I will take responsibility, and I

23    know I am going to receive a significant sentence because of

24    it.

25          THE COURT:  Thank you.

1           The government is going to argue to me that his

2     conduct in jail and getting involved in a knife fight and

3     incurring other disciplinary measures indicates a hardening of

4     attitude that will not protect the public from further crimes

5     of the defendant unless he is more severely punished.  What's

6     your comment about that?

7           MR. MAGWOOD:  Some of the disciplinary things are

8     things that I have seen recently, but when I looked at it—and

9     I read the new ones this morning—the things that he was doing

10    in his cell at the time, the covering of the windows and

11    asking for psychiatric help, I think, is telling.

12          His behavior has changed significantly over the last

13    six months.  I'm not sure what's going on.  I don't know what

14    services he is receiving, but he was never -- that was never

15    any way that he has been.

16          You see him in court, and he is very conscious about

17    being polite, so I'm not sure, but I would like to have him

18    evaluated if -- especially if he is asking for it.  You know,

19    and I'm not sure if anything has been done with that, but I

20    think that's a significant thing, because that behavior in a

21    room by himself indicates that there is a severe agitation,

22    and that level of agitation can usually manifest itself at his

23    age.  He is around 20, 21.  That can be the onset.  And it

24    usually goes undiagnosed.  And these are the types of

25    behaviors that I have seen in the past, personal, that

N6s2MojS kjc

1  indicate that something is wrong and needs to be fleshed out,

2  honestly, Judge, before we even go further, because it doesn't

3  make sense.

4         THE COURT:  Sorry?

5         MR. MAGWOOD:  It doesn't make sense that his behavior

6  would change that dramatically in the last six months.

7         THE COURT:  I'm not sure it changed dramatically.

8  That's the problem.  It seems to be consistent with the crime

9  that put him in jail in the first instance.  That is the

10  government argument, and it's hard to say they are not right.

11         MR. MAGWOOD:  That is --

12         THE COURT:  He went to jail because he put an

13  imitation gun that looked real to the head of the parking

14  attendant in a small enclosure, got the parking attendant on

15  the floor and, for a number of minutes, held the gun to the

16  head of the parking attendant and had him lie on the ground,

17  and Mr. Mojica had his knee on the back of the parking

18  attendant.

19         So I put myself into that position.  Let's suppose I

20  am working to get my tuition and I worked as a parking

21  attendant in a parking lot, and some guy came in with a gun

22  and put me to the floor and held me there while they will

23  looked around at the car keys and took some cars they wanted

24  to take.  How would I feel?  How many nightmare dreams would I

25  have?  How would I feel about getting another job where I was

N6s2MojS kjc

1    alone?

2            It strikes me that when you talk about crime, we talk

3    about the conduct of the person who is being accused of the

4    crime.  What is the impact of the crime?  Why is it that

5    someone who commits a crime, is not a wealthy person, who

6    needs money, who doesn't have the things that other people

7    get, doesn't have a feeling for the other person that they

8    harm?  It indicates to me sort of a hardening of attitudes, so

9    that there is real danger that when the person finishes his

10   time, he is going to be committing another serious crime that

11   may even be worse.  And people think that when I accept

12   responsibility, I did the crime so I will do the time, but

13   there is a problem beyond the time, and that is what's at

14   stake in this case.

15           Mr. Mojica is 20 years old.  I am 89.  Suppose he

16   lives as long as I do, another 69 years.  Is it going to be a

17   life of crime or is it going to be a life where he settles

18   down and gets a job and works his way up and provides a living

19   for a family, raises a family, and lives a normal life?  What

20   does it look like?  What are the chances, one or the other?

21           And I get a report this morning that Mr. Mojica is

22   trying to break out of the van that took him from the

23   detention center to court.  What does it look like?  What could

24   I -- you know, I was going to ask you to comment on some of

25   these things, Mr. Mojica.  I can do it now.

N6s2MojS kjc

1              Tell me about yourself.  Tell me what makes you tick.

2      Why do you do these things?

3              THE DEFENDANT (In English):  There is a lot of

4      reasons and there is no reasons.  It is that I be bored, I

5      being feeling suicidal, I be unloved, and I be having hope,

6      then I lost the hope, then I be trying to have fun.

7              THE COURT:  You've had a tough life.

8              THE DEFENDANT (In English):  Huh?

9              THE COURT:  You have had a really tough life.

10             THE DEFENDANT (In English):  Yeah, since I'm a little

11     kid.  But it's all right, because I'm -- I'm getting used to

12     what it comes, whatever it comes.  You just got to keep going,

13     I believe, so I just keep going.  So I try to behave.  And

14     then something just have my mind, I remember everything; then

15     I started crying, then I don't want to cry, because I want to

16     grow up; then I started just breaking things, then I stopped;

17     then I need help, then I don't need help; then I started

18     working out.  And this -- I don't know what's going on with

19     me, and I'm trying to find out myself.

20             So I let others help me, that's why I don't hurt

21     nobody and I follow orders, so I just be trying to figure it

22     out, why if I'm following orders I still be punished.  So I

23     just start thinking.  Sometimes I cannot sleep, then I try to

24     sleep.  Then all I want is love, and they took that from me.

25     So it's like, all right, then I had hope, then they took that

N6s2MojS kjc

1   from me.  So then I start having fun, and then they --

2           THE COURT:  Who took it away from you?

3           THE DEFENDANT (In English):  Life.  That's how it

4   goes.

5           THE COURT:  Life took away love.

6           THE DEFENDANT (In English):  Life took away

7   everything, because since I'm a little kid, I have everything,

8   I didn't have nothing.  Because I was, like -- I been in a big

9   room by yourself, with a big bed, with a PlayStations,

10  computers, phones, toys, and everything you think you need is

11  not happiness.

12          THE COURT:  I bet you know someone in the street who

13  had as much deprivation, as much hardship as you and turned out

14  to be honest?

15          THE DEFENDANT (In English):  I know, but that's not

16  what I am saying.

17          THE COURT:  What's the difference between you and that

18  person?

19          THE DEFENDANT (In English):  Because, look, it's no

20  difference.  I don't -- I don't compare myself to nobody

21  because I don't want to make nobody feel no type of way.  So I

22  put myself as an example and as an explanation, so I express

23  myself the way I  am and what I.  Do because I don't like to

24  talk about others because that could get me in a deeper, worse

25  predicament, and  I could get somebody involved in my case or

N6s2MojS kjc

1    my problem.

2            THE COURT:  That's what I am afraid of.  That's

3    exactly what I am afraid of, that you catch yourself in a

4    predicament and do something bad again, and it could be worse

5    than it was before.

6            THE DEFENDANT (In English):  Because the thing is --

7            THE COURT:  What am I to do as a judge?  I don't want

8    to hurt your life, but I can't let you go out and commit

9    crimes.

10           THE DEFENDANT (In English):  I understand that.

11   That's why it is like, it is like I still need help, but I

12   don't need help; and I still need time, and I don't need time;

13   and it's, like, it's complicated for me to understand what I

14   need and what I don't need.

15           THE COURT:  You could get help in jail.  Did you try

16   to get help?

17           THE DEFENDANT (In English):  Excuse me?

18           THE COURT:  You could get help in jail.  Did you try

19   to get help?

20           THE DEFENDANT (In English):  Of course I tried to get

21   help.

22           THE COURT:  And what happened?

23           THE DEFENDANT (In English):  And they helped me.

24   They still trying.  We all trying to understand me, and I'm

25   trying to understand me.  And it's, like, that's why I got to

1    the box, and then they took me out of the box; and then I

2    talked to psychology, and I haven't talked to her again, I

3    don't know why.  And it's like we still -- we still trying to

4    figure me out, I believe.

5            So that's what I believe, because I don't know what

6    to believe.  And it's like I want to express myself all the

7    way all the time, and I want to tell you everything I know and

8    I want to hundred percent or a thousand percent or infinite

9    percent, I want to tell you everything, I swear.  But I don't

10   know everything, and that's the problem that I don't know

11   things, and I been trying to know more and ask.  And I don't

12   like reading books and I don't care about phones and I don't

13   care about nothing.  And I think that's the problem, that I

14   don't care about nothing.

15           And at the beginning I wanted to die.  I felt

16   suicidal because I was in a cell with somebody for so long,

17   and he have a daughter and he haven't seen his daughter for

18   years.  And I understand his pain because I -- I don't have a

19   daughter, but I'm a son of somebody, and I know how my dad

20   feels.  So I was like, you know what, Imma just die.  Imma get

21   out of this cell and Imma -- Imma kill the person that did

22   that damage to one of my brothers and Imma take the blame, and

23   I don't care if the judge give me life.  Imma just gonna keep

24   going, and I don't care, 'cause he hurt one of my brothers.

25           So before I got out of the cell, they pulled up, the

1    officers pulled up, and they started giving me orders, so I

2    didn't want to take no orders, so I started giving direct

3    orders to them.  So they didn't take my orders, so I keep

4    breaking things.  And then they told me that, you know, it's

5    like 50/50 type shit -- I don't want to say that word.  That

6    was bad.  It's like 50/50 work, so they were like, all right,

7    you got to come, and they started yelling.  So I obey they

8    orders and they obey my's.  And they grabbed me.  They tie me

9    up.  I got to suicide watch 'cause I got -- I needed the help.

10   I was screaming for help.  I was screaming that I needed to go

11   to suicide watch.  So I flooded the cell and I broke this, and

12   that's the reason why they took me to suicide watch.

13            And then from suicide watch, I thought they was going

14   to left me for dead, so I got scared.  So I started breaking

15   the beds.  I started breaking everything.  I thought, I

16   thought that was the way I could call their attention.  So I

17   started peeing on myself.  I started acting like a little kid.

18            THE COURT:  I'm asking you now, what do you think of

19   what you were thinking?

20            THE DEFENDANT (In English):  I was thinking that --

21            THE COURT:  You think that's a solution, to do what

22   you were doing?

23            THE DEFENDANT (In English):  No.  I wasn't looking

24   for that solution.  I thought that I couldn't help somebody.

25            THE COURT:  But now you are here.

N6s2MojS kjc

1          THE DEFENDANT (In English):  Huh?

2          THE COURT:  Now you are here.  I have to sentence

3     you.  You are telling me that you are driven by forces that

4     may result in someone being killed.  That's what you just

5     said.

6          THE DEFENDANT (In English):  Excuse me?  No, I said

7     that -- what I say?

8          THE COURT:  You said that you have forces and some

9     things may happen and you may kill somebody --

10          THE DEFENDANT (In English):  Oh, 'cause when I was in

11     the box, right, somebody pull up, and there is a kid that,

12     like, he is around my age, right --

13          THE COURT:  Look, I'm not a psychologist.  I can't

14     understand what makes you tick.

15          THE DEFENDANT (In English):  All right.

16          THE COURT:  I can't fix anything up that's

17     psychologically damaged.  I'm a judge.

18          THE DEFENDANT (In English):  All right.

19          THE COURT:  I've got to sentence you.  And what I am

20     seeing is that I am sentencing someone who doesn't seem to be

21     learning the lesson --

22          THE DEFENDANT (In English):  I'm trying.

23          THE COURT:  -- of the crime that's been committed and

24     the time that has to be spent for that crime.  I see a person

25     who is going to commit other crimes.  You will get out of jail

1    and commit other crimes.  That's what I am saying.

2            THE DEFENDANT (In English):  It's like I'm trying.

3            THE COURT:  I don't want to see that, but that's what

4    I am seeing.

5            You know, in life, you are either an actor or a

6    victim.  If you are a victim, things happen to you and you

7    blame what happens to you for whatever you do.  If you are an

8    actor, you take responsibility and say life's tough.  Maybe I

9    didn't have love or other toys or what have you, but I can get

10   over it, I can do something with my life.

11           So you are in the first one.  You are a victim.  You

12   are comfortable being a victim.  As long as you are going to

13   be a victim, you are going to commit crimes, because it's not

14   your fault, something is happening, you are suicidal or

15   something's happening to you, so you do things without

16   thinking.

17           But you have got to be an actor.  You have got to say

18   if I do this, something's going to happen to me or to another

19   person.  I don't want to hurt another person.  I don't want to

20   hurt myself.  I want to live a good life.  That's where you've

21   got to end up.

22           And I have to punish you now, and from what I hear, I

23   think I have to do what the government says I should do, which

24   is give you 75 months.

25           THE DEFENDANT (In English):  I don't have no problem

N6s2MojS kjc

1    with your decision because --

2            THE COURT:  You say you don't have any problem with my

3    decision?

4            MR. MAGWOOD:  No I think he is saying that he

5    understands what you are saying.  But, Judge, I think he is

6    saying that he is trying to figure out what's going on.

7            THE COURT:  I know.  What are you saying?

8            THE DEFENDANT (In English):  Me?

9            THE COURT:  Yeah.

10           THE DEFENDANT (In English):  I'm saying -- I don't

11   know.  I know what I'm saying.  I'm saying that I have no

12   problem with your decision, but it's like I still -- I'm

13   still -- I don't know.  I'm still being me.  These are --

14   that's the problem.

15           THE COURT:  Who is me?  Who are you?

16           THE DEFENDANT (In English):  Leury Mojica.

17           THE COURT:  Are you a guy that commits crimes or are

18   you a guy that wants to change his life?

19               (Defense counsel and defendant confer)

20           THE DEFENDANT (In English):  I do have dreams.  I

21   have a lot of dreams.  I be having dreams about having a car

22   wash, having, what else, having Airbnbs, I be having dreams

23   about I want a wife, I want kids, I want cars, I want pinball.

24           THE COURT:  But you've got to do it the right way.

25           THE DEFENDANT (In English):  All right.

1           THE COURT:  You've got to do it with work.  You've got

2     to do it with staying clean.

3           Look, as I say, I'm not a psychologist.  I'm not a

4     social worker.  I'm a judge.

5           I am going to sentence you to 70 months.  It's less

6     than what the government wants.  It's higher than the

7     guidelines.  I want to show you that I have that little bit of

8     faith in you, not a lot, but a little bit of faith in you that

9     you will turn yourself around.

10           And I want you to think about why I am giving you

11     these 70 months.  I am giving you these 70 months because you

12     still pose a danger to society.  The punishment is not -- the

13     punishment assigned to this crime is not a sufficient

14     deterrent, meaning it's a warning you can't do it again, and

15     there is danger you will commit crimes again.

16           So I am going to give you an extra month, but not as

17     much as the government wants because I believe that people can

18     turn themselves around.  The first thing is you have to want

19     to.  Who is me?  That's the question you ask.

20           THE DEFENDANT (In English):  Who is me?

21           THE COURT:  Are you a person who is going to strike

22     out at others because I want this or I want that or someone is

23     hurting me and I have to get back at them or what?  Or are you

24     a person that can take control of himself and find love?  If

25     you are not prepared to love someone else, you can't get love

1    in return.  In order to be loved, you have to love.  If you

2    love, you can't hurt.  You have to build.

3        You've got to think about these things.  You have to

4    figure out how could I do these things?  People tell you in

5    jail do this, do that.  You can't just say, hell with you.

6    You've got to -- you are in a place where you have got to take

7    commands.  You are not on the street.  You are in jail.  And

8    if you someone else is in trouble in jail, you can't be the

9    guy who fixes it up.  You've just got to look out for yourself

10   and do what you have to do and get out of jail and create a

11   life for yourself.  That's what you need to do.

12       All right.  70 months in custody with recommendations

13   of psychiatric evaluations.  And where should it be served,

14   Mr. Magwood?  Where are you recommending?  Where do you

15   recommend -- where should I recommend that he be jailed?

16       MR. MAGWOOD:  Judge, I would try to keep it local,

17   either in Connecticut --

18       THE COURT:  Proximate to New York City.  Okay.  Those

19   two recommendations.  First one is that he be confined in a

20   place where he can get adequate psychiatric help --

21       MR. MAGWOOD:  Yes.

22       THE COURT:  -- and the second that he be jailed as

23   close as possible to New York City.

24       Following custody, he will be sentenced to supervised

25   release of three years.  The purpose of the supervised release

N6s2MojS kjc

1     is to help you adjust and get ahold of yourself and start

2     working and have the structure of probation to help you.  But

3     there are a lot of rules attached to that, and if you violate

4     those rules, a hearing can happen and I could sentence you to

5     more jail even though you served your term.  So you have got

6     to behave on that supervised release as well, and use it in a

7     positive way to help you get skills, to help you get jobs,

8     starting at the bottom and trying to move yourself up.

9              The conditions are as stated in the presentence

10    investigative report.

11             Starting on page 20, the mandatory conditions are

12    imposed, including the provision for drug testing.

13             The standard conditions set out at pages 20, 21, and

14    22 are all imposed.

15             As special conditions, the provision for outpatient

16    treatment in the first paragraph on page 22 is imposed.

17             A provision for allowing search in the second

18    paragraph on page 22 is imposed.

19             There is a mandatory restitution in this case, I

20    guess, is there, Mr. Weinberg?

21             MR. WEINBERG:  Yes, your Honor, there is, and the

22    parties --

23             THE COURT:  I will get to it.

24             MR. WEINBERG:  Okay.

25             THE COURT:  So you must give access to the probation

N6s2MojS kjc

1    officer to requested financial information and not incur new

2    credit charges as provided in the third and fourth paragraph

3    under special conditions.

4            And finally, you shall refrain from contact with all

5    known members or associates of the Trinitarios, as well as any

6    other street gang.

7            You shall be supervised by the district of your

8    residence.

9            There is a mandatory special assessment of $100, which

10    will be due upon the filing of the judgment.

11            Restitution, Mr. Weinberg, how much is it?

12            MR. WEINBERG:  Yes, your Honor.  There is a consent

13    order of restitution that the parties signed prior to the last

14    proceeding.  It is in the amount of $10,000.

15            THE COURT:  I signed it?

16            MR. WEINBERG:  You did not.  The defendant and his

17    counsel and the government signed it.

18            THE COURT:  Do you want to hand it up for me?

19            MR. WEINBERG:  I will.  I just would note, looking at

20    it right now, I noticed there is a typo on the first page.  It

21    refers to $100,000.  It should be $10,000.

22            THE COURT:  Correct it in ink and have Mr. Magwood

23    initial it.

24            MR. WEINBERG:  I will initial it and I should have

25    Mr. Magwood initial it, as well?

N6s2MojS kjc

1          THE COURT:  Yes.

2          MR. WEINBERG:  I am also bringing up the schedule of

3   victims to receive the restitution, which will be filed under

4   seal, the government requests be filed under seal.

5          THE COURT:  Do you want me to sign that, too, or is

6   that going to be attached?

7          MR. WEINBERG:  It is just attached separately.  It is

8   the schedule.

9          THE COURT:  Okay.  I have signed the order.  I have

10  noted the potential recipients.  And I will give it back to

11  you, Mr. Weinberg.

12         Can you please file it on the ECF --

13         MR. WEINBERG:  Yes, your Honor.

14         THE COURT:  -- and under seal.

15         Payments will be made on the 30th day of each month

16  of the supervised release at the rate of 10 percent of gross

17  income.  There shall be no interest provided there are timely

18  payments.

19         The restitution liability paragraph on page 24 is

20  adopted.

21         I don't impose a fine because there is no ability to

22  pay a fine.

23         Is there forfeiture in the case?

24         MR. WEINBERG:  No, your Honor.  The government is not

25  seeking forfeiture.

N6s2MojS kjc

1              THE COURT:  No forfeiture.

2              You are entitled under the Constitution to appeal,

3      Mr. Mojica.  If you wish to appeal the sentence, discuss it

4      with Mr. Magwood.

5              Mr. Magwood, if your client wishes to appeal, I

6      instruct you to do so on a timely basis.

7              If you can't afford a lawyer, the government will

8      provide a lawyer free of charge.

9              Underlying counts?

10             MR. WEINBERG:  Yes, your Honor.  The government moves

11     to dismiss the underlying count, which is Count One.

12             THE COURT:  One to three, no?

13             MR. WEINBERG:  Mr. Mojica was not charged in Counts

14     Two and Three.  But for the avoidance of doubt, the government

15     moves to dismiss all open counts against Mr. Mojica.

16             THE COURT:  So ordered.

17             Is there anything I missed?

18             MR. WEINBERG:  You may have said it when I was

19     looking at the papers, but just the special assessment.  I'm

20     not sure.

21             THE COURT:  I said $100 due upon filing of the

22     judgment.

23             Anything else?

24             MR. WEINBERG:  Nothing else, your Honor.  Thank you.

25             THE COURT:  Mr. Magwood?

N6s2MojS kjc

1          MR. MAGWOOD:  Nothing else, your Honor.  Thank you.

2          THE COURT:  Okay.  That's the punishment.  Mr. Mojica

3    is now detained, so he will continue his detention.  I think

4    that covers everything.

5          Mr. Mojica, I wish you well.  You've got a tough life.

6    You have had a tough life.  But no human being has to be a

7    victim.  There is always light if you look for light.  There

8    is always love if you look for love and be prepared to give

9    your love.

10          One way or another, you have to change your ways,

11    because continuing your ways, you will die on the street.

12    Changing your ways gives you a chance to live a decent life

13    and to do better for your children than your parents did for

14    you.

15          Good luck to you.

16          We are adjourned.

17                              oOo

18

19

20

21

22

23

24

25